Filed 8/24/20; certified for publication 9/15/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOSEPH MEJIA, | |
| Plaintiff and Respondent, | G058112 |
| v. | (Super. Ct. No. 30-2018-01023401) |
| DACM INC., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Peter J. Wilson, Judge. Affirmed.

Severson & Werson, Jan T. Chilton, John B. Sullivan and Erik Kemp for Defendant and Appellant.

Kemnitzer, Barron & Krieg, Bryan Kemnitzer, Mark A. Chavez, Adam McNeile and Kristin Kemnitzer for Plaintiff and Respondent.

\*        \*        \*

Defendant DACM, Inc. (Del Amo), a motorcycle dealership, moved to compel arbitration of a customer's claims Del Amo violated various consumer protection statutes when it sold the customer a motorcycle. The trial court denied Del Amo's petition to compel arbitration, finding the arbitration provision was unenforceable under *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945 (*McGill*) because it barred the customer from pursuing "in *any* forum" his claim for a public injunction to stop Del Amo's allegedly illegal practices.

Del Amo contends the trial court erred in ruling the arbitration provision is unenforceable under *McGill*, *supra*, 2 Cal.5th 945. Del Amo makes essentially four arguments. It contends *McGill* does not apply because, due to a choice-of-law provision in the contract, Utah law rather than California law governs the dispute. Del Amo further contends if California law applies, the arbitration provision "does not run afoul of *McGill*" because Mejia does not seek a public injunction. Del Amo also argues the arbitration clause is not unenforceable under *McGill* because the provision does not prevent a plaintiff from seeking public injunctive relief in *all* fora. Finally, Del Amo asserts if the arbitration provision is unenforceable under *McGill*, the Federal Arbitration Act (FAA) preempts *McGill* and requires enforcement of the clause.

There is no merit to any of these contentions. Consequently, we affirm the order.

I

BACKGROUND

A. *The Underlying Transaction*

In May 2017, plaintiff Joseph Mejia (Mejia) bought a used motorcycle from Del Amo for $5,500. Mejia paid $500 cash and financed the remainder of the purchase price with a WebBank-issued Yamaha credit card he obtained through the dealership purchasing the motorcycle. In applying for the credit card, Mejia signed a credit application acknowledging he had received and read WebBank's Yamaha Credit Card

2

Account Customer Agreement (the credit card agreement), which contained an arbitration provision. The arbitration provision, set forth in section 36 of the credit card agreement, stated either WebBank, Mejia, or "Yamaha (including its affiliates and dealers)," could, acting alone, elect and thereby "require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this section . . ." The provision defined "Claim," in pertinent part, as follows: "As used in this Arbitration Provision, 'Claim' shall include any . . . claim, dispute, or controversy . . . arising out of your application for and origination of this Account, this Agreement, your Account or the relationship between you and us, including (except to the extent provided otherwise in the last sentence of section (f) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement. . . ." (§ 36(a).)

In subpart (f), the arbitration provision specifically barred arbitration of all class, representative, or private attorney general claims: "NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS (INCLUDING AS PRIVATE ATTORNEY GENERAL ON BEHALF OF OTHERS), EVEN IF THE CLAIM OR CLAIMS THAT ARE THE SUBJECT OF THE ARBITRATION HAD PREVIOUSLY BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN A COURT AS CLASS, REPRESENTATIVE, OR COLLECTIVE ACTIONS IN A COURT. . . . Unless consented to in writing by all parties to the arbitration, an award in arbitration shall determine the rights and obligations of the named parties only, and only with respect to the claims in arbitration, and shall not (a) determine the rights, obligations, or interests of anyone other than a named party, or resolve any Claim of anyone other than a named party; nor (b) make an award for the benefit of, or against, anyone other than a named party. . . . Any challenge to the validity of this section (f) shall be determined exclusively by a court and not by the administrator or any arbitrator."

Crucially for this appeal, the arbitration agreement also contained a "poison pill" provision. Subpart (h) of section 36 states, in pertinent part, as follows: "If any portion of this Arbitration Provision *other than section (f)* is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. If an arbitration is brought on a class, representative, or collective basis, and the limitations on such proceedings in section (f) are finally adjudicated pursuant to the last sentence of section (f) to be unenforceable, *then no arbitration shall be had*." (Italics added.)

The credit card agreement also contained a choice-of-law provision stating, "This Agreement is governed by applicable federal law and by Utah law."

B. *The Petition to Compel Arbitration*

Sometime after his purchase, Mejia filed a complaint against Del Amo on behalf of himself and other similarly situated consumers alleging Del Amo "has violated and continues to violate" the Rees-Levering Automobile Sales Finance Act (Rees-Levering) by failing to provide its customers with a *single document* setting forth all the financing terms for motor vehicle purchases made with a conditional sale contract. According to Mejia, Rees-Levering's "'single document rule' . . . requires motor vehicle dealers in transactions involving the financing of motor vehicles to state in a single document all the agreements concerning the total cost and terms of payment, including the terms of financing as required by Civil Code section 2981.9."

In essence, the complaint alleges Del Amo induces its customers to finance their motorcycle purchase with a WebBank credit card, an "open-ended" credit arrangement which, over time, substantially increases the customer's cost. Moreover, Mejia alleges, by facilitating the customer's use of a credit card for the purchase, Del Amo deceptively makes the transaction appear to be a "cash purchase," which is exempt from Rees-Levering. In actuality, Mejia asserts, the financing arrangement is a conditional sale contract in which WebBank, the legal owner of the motorcycle, takes a

4

security interest in the motorcycle which does not vest in the customer until after the customer makes all payments due to WebBank. Consequently, Mejia contends, the purchase transaction is governed by Rees-Levering.

The complaint alleges Del Amo's failure to provide all the required financing information in a single document violates not only Rees-Levering and Civil Code section 2981 et seq., but also the Consumers Legal Remedies Act (CLRA, Civ. Code, § 1750 et seq.) and the Unfair Competition Law (UCL, Bus. & Prof. Code, § 17200 et seq.). Among the relief requested, the complaint requests an injunction prohibiting Del Amo from selling motor vehicles "without first providing the consumer with a single document containing all of the agreements of Del Amo and the consumer with respect to the total cost and the terms of payment for the motor vehicle, including any promissory notes or other evidence of indebtedness in accordance with Civil Code [section] 2981.9." The complaint further requests an injunction preventing Del Amo from selling motor vehicles "without first providing the consumer with all disclosures mandated by Civil Code [section] 2982 in a single document."

Based on the arbitration clause in the credit card agreement, Del Amo moved to compel arbitration and to dismiss or stay the case pending completion of the arbitration.

Mejia filed opposition to the motion to compel arbitration. Mejia argued Del Amo, a nonsignatory to the credit card agreement, lacked standing to enforce the arbitration provision in that agreement. Mejia also argued his claims against Del Amo "are well beyond the scope of the Arbitration Agreement," given the complaint does "not even mention[]" the credit card agreement and "only disputes the adequacy of the disclosures provided by Del Amo for a separate **Sales Agreement**." Mejia also argued the arbitration provision is unenforceable under *McGill, supra*, 2 Cal.5th 945, because it purports to waive Mejia's right to seek a public injunction "'in any forum.'" (See *McGill, supra*, 2 Cal.5th at p. 961 [arbitration provision purporting to waive right to seek

5

"in any forum" statutory remedy of public injunctive relief "is invalid and unenforceable under California law"].)

C. *The Order Denying the Petition to Compel Arbitration*

The trial court denied the petition to compel arbitration. Though the court concluded the arbitration provision "appears to encompass [Mejia's] claims in this action, and Del Amo appears to be an intended third-party beneficiary of that provision," the court nonetheless ruled the arbitration provision is unenforceable under *McGill*, *supra*, 2 Cal.5th 945. The court explained its reasoning as follows:

"Plaintiff's Complaint seeks, among other remedies, a public injunction. The arbitration provision, as Plaintiff correctly argues, prevents Plaintiff from seeking and obtaining a public injunction in arbitration. And because, if Del Amo elects to compel arbitration, arbitration is the *only* forum available to Plaintiff, Plaintiff is effectively precluded from seeking a public injunction in *any* forum.

"As held in *McGill*[, *supra*,] 2 Cal.5th 945, 961, Plaintiff's right to seek a public injunction is not waivable, and thus, at the least, this Court would have to sever the prohibition on public injunctive relief from the Arbitration Provision before it could enforce that provision. But, by the terms of the Credit Card Agreement, the parties have restricted the right of the Court to so sever.

"Specifically, Section 36(f) of the Credit Card Agreement contains the prohibition on public injunctive relief and provides that '[a]ny challenge to the validity of this section (f) shall be determined exclusively by a court and not by the administrator or any arbitrator.' Section 36(h) in turn provides that '[i]f an arbitration is brought on a class, representative, or collective basis, and the limitations on such proceedings in section (f) are finally adjudicated pursuant to the last sentence of section (f) to be unenforceable, then no arbitration shall be had.'

"Thus, since the Court hereby determines that the limitation on public injunctive relief is unenforceable, 'then no arbitration shall be had.' [¶] Del Amo's motion to compel arbitration is accordingly denied."

## II

### DISCUSSION

Del Amo argues the trial court erred in concluding the arbitration provision is unenforceable under *McGill*, *supra*, 2 Cal.5th 945, a case we discuss in more detail below. Del Amo asserts *McGill* does not apply to this case because the credit card agreement specifies Utah law rather than California law governs the agreement. Alternatively, Del Amo asserts the arbitration provision is not unenforceable under *McGill* because Mejia does not seek a public injunction and, in any event, the arbitration provision does not bar public injunctive relief in *all* fora. Finally, Del Amo contends if *McGill* renders the arbitration provision unenforceable, the Federal Arbitration Act (FAA) preempts *McGill* and requires enforcement of the provision.

Because all the issues raised in this appeal involve only questions of law, we review the trial court's order de novo. (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406; *Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 890.) For the reasons explained below, we find none of Del Amo's contentions has merit.

A. *The McGill Decision Applies Notwithstanding the Choice-of-Law Provision*

      1.     A Short Primer on *McGill*

In *McGill*, *supra*, 2 Cal.5th 945, a credit card accountholder filed a class action against the issuing bank alleging claims under the CLRA, UCL, and the false advertising law (Bus. & Prof. Code, § 17500 et seq.) for deceptive practices in offering a "'credit protector'" insurance plan. The complaint sought money damages, restitution, and an injunction prohibiting the bank "from continuing to engage in its allegedly illegal and deceptive practices." (*Id*. at p. 953.) The Supreme Court noted such "public

7

injunctive relief, i.e., injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public," is among "the statutory remedies available for a violation of" the CLRA, the UCL, and the false advertising law. (*Id.* at p. 951.)

The bank in *McGill* petitioned to compel the account holder to arbitrate her claims on an individual basis based on an arbitration clause in the customer account agreement. The arbitration clause required arbitration of "'All Claims . . . ,'" and stated, "'Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an *individual* (non-class, non-representative) basis, and the arbitrator may award relief only on an *individual* (non-class, non-representative) basis.'. . . '*The arbitrator will not award relief for or against anyone who is not a party.* If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, *nor may such Claim be pursued on your or our behalf in any litigation in court*.'" (*McGill*, *supra*, 2 Cal.5th at p. 952, italics added.)

The Supreme Court identified the issue in *McGill* as "whether the arbitration provision is valid and enforceable insofar as it purports to waive McGill's right to seek public injunctive relief *in any* forum." (*McGill*, *supra*, 2 Cal.5th at p. 956.) The high court concluded the arbitration clause had such a sweeping preclusive effect across all fora because the clause barred McGill from pursuing "'Claims and remedies'" on a class or representative basis in both arbitration and "'in any litigation in court.'" (*Id.* at p. 952.) Having identified the issue, the Court ruled the arbitration provision was "invalid and unenforceable under California law" precisely because "it purports to waive McGill's statutory right to seek [public injunctive] relief." (*Id.* at p. 961.)

In explaining that conclusion, the Supreme Court cited Civil Code section 3513, which provides, in pertinent part, that "'a law established for a public reason cannot be contravened by a private agreement.'" (*McGill*, *supra*, 2 Cal.5th at p. 961.) In

8

other words, a statutory right created to serve a public purpose is *unwaivable*. The Court stated, "By definition, the public injunctive relief available under the UCL, the CLRA, and the false advertising law . . . is primarily 'for the benefit of the general public.' [Citations.]" (*Ibid.*) Accordingly, the Supreme Court concluded, "the waiver in a predispute arbitration agreement of the right to seek public injunctive relief under these statutes would seriously compromise the public purposes the statutes were intended to serve. Thus, insofar as the arbitration provision here purports to waive McGill's right to request in any forum such public injunctive relief, it is invalid and unenforceable under California law." (*Ibid.*)

      2.     The Choice-of-Law Analysis

Del Amo argues the trial court erred in ruling the arbitration provision is unenforceable under *McGill*, *supra*, 2 Cal.5th 945 because Utah law, not California law, applies in this case. The contention lacks merit. We conclude the trial court properly refused to enforce the choice-of-law provision in the credit card agreement.

In *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459 (*Nedlloyd*), our high court set forth the rules for deciding the enforceability of contractual choice-of-law provisions. *Nedlloyd* involved a contract dispute between a shipping company which was incorporated in Hong Kong with its principal place of business in California, and three other shipping companies which were incorporated and had their principal places of business in the Netherlands. The contract contained a choice-of-law clause providing the contract was to be governed by Hong Kong law. The Supreme Court held the choice of law clause was fully enforceable and applicable to the claims asserted in that litigation based on an analysis of the factors listed in the Restatement Second of Conflict of Laws (Restatement) section 187, subdivision (b).

As the Supreme Court explained in *Nedlloyd*, in determining whether to enforce a contractual choice-of-law provisions, "California courts shall apply the principles set forth in Restatement section 187, which reflects a strong policy favoring

9

enforcement of such provisions." (*Nedlloyd*, *supra*, 3 Cal.4th at pp. 464-465.) Under the Restatement section 187 principles, "'The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either [¶] (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or [¶] (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.'" (*Id.* at p. 465, fns. omitted; *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 917 [if party seeking to enforce choice-of-law meets burden of proving substantial relationship, "the parties' choice generally will be enforced *unless* the other side can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue"] (italics added).)

Del Amo prevails on the first step of the Restatement section 187 analysis because it produced evidence the chosen state, Utah, has a substantial relationship to the parties or the transaction. In *Nedlloyd*, *supra*, 3 Cal.4th at p. 467, the Supreme Court held a party's domicile or incorporation in the chosen state "provides the required 'substantial relationship.' [Citation.]" (*Ibid.*) Del Amo satisfied the "substantial relationship" requirement by submitting evidence WebBank's headquarters and bank charter are in Utah.

Del Amo fares less well in the next two steps of the Restatement section 187 analysis, however: Mejia persuasively argues Utah law is contrary to a fundamental policy of California, and California has a "'materially greater interest than the chosen state in the determination of the particular issue'" involved in this appeal: the enforceability of arbitration contracts which purport to waive the right to seek public injunctive relief.

10

Del Amo argues Utah law is not contrary to any fundamental policy of California because both states "broadly favor[] enforcement of arbitration clauses as written. [Citations.]" Moreover, Del Amo contends, "Mejia cannot show that application of Utah law would deny him the right to pursue adequate relief." Del Amo argues Utah's consumer protection statute, the Consumer Sales Practices Act (UCSPA) "broadly prohibits unfair and deceptive acts in consumer transactions. . . . [and] also provides aggrieved consumers various remedies, including damages, restitution, and equitable relief. . . . So applying Utah law and dismissing plaintiffs' UCL and CLRA claims would not violate any fundamental public policy of California[.]"

Mejia argues Utah's consumer protection statute lacks many of the substantive protections California law provides, pointing, for example, to Rees-Levering's requirement of full disclosure in one document of all cost items associated with financing a motor vehicle purchase, with no comparable provision in Utah law. We need not delve into the significance of the distinctions Mejia draws between the two states' consumer protection statutes, however, because there is a simpler basis for finding Utah law conflicts with a fundamental policy of California. As Del Amo concedes in its reply, "Utah does not permit courts to invalidate arbitration clauses that waive public injunctive relief in any forum."

The California Supreme Court's *McGill* decision articulates the state's fundamental policy against enforcing the contractual waiver of the right to seek in any forum a public injunction, which "[b]y definition . . . is primarily 'for the benefit of the general public.' [Citations.]" (*McGill*, *supra*, 2 Cal.5th at p. 961.) Utah law does not afford the same protection to the right to seek a public injunction. Consequently, applying Utah law would conflict with California's fundamental interest in protecting Mejia's right to seek public injunctive relief from Del Amo's allegedly illegal practices.

Faced with this obstacle to enforcing the choice of law provision, Del Amo responds with three arguments, each unsuccessful. The first two arguments dispute the

11

application of *McGill* to this case.  Del Amo argues "the relief Mejia seeks does not qualify as a public injunction" and "the [arbitration] agreement does not waive the right to seek public injunctive relief in all forums."  We consider and reject both these arguments in the next section of this opinion.  Del Amo's third argument is circular and conclusory, deserving no discussion.  Del Amo states:  "Finally, Mejia's argument fails as Utah law provides him adequate relief, and he fails to show that denying him the additional remedy of a public injunction would violate any fundamental public policy in this case."  We conclude Mejia carried his burden under *Nedlloyd*, *supra*, 3 Cal.4th at p. 465, to show Utah law is contrary to a fundamental policy of California.

Mejia likewise prevails in his argument California has a materially greater interest than Utah in the determination of the particular issue involved in this case. (*Nedlloyd*, *supra*, 3 Cal.4th at p. 465.)  Del Amo characterizes California's interest here as "an interest in regulating transactions concerning its consumers," and asserts "Utah has an equally compelling interest in regulating banks chartered within its borders."  Del Amo asserts, "[S]ince WebBank conducts business throughout the United States, Utah has a compelling interest in ensuring uniform regulation and interpretation of its banks' credit card agreements. . . . Utah's interests would be severely impacted if banks located and chartered there were exposed to the peril of litigation under 50 different states' regulatory schemes."  Del Amo further asserts, "Mejia seeks a ruling effectively invalidating the WebBank-Yamaha credit card program in California, thus significantly impairing WebBank's interests even though it is not a party to the case.  The impact of such a rule of law on WebBank's business operations and Utah's interests would be substantial."

Del Amo's argument badly misses the mark.  Mejia's complaint does not seek to regulate WebBank, interpret its credit card agreement, or invalidate its "credit card program in California[.]"  In fact, this case has nothing to do with *WebBank's* practices or with its credit card program.  Instead, the complaint has everything to do

12

with *Del Amo's* practices, and Del Amo is a California corporation, domiciled and doing business in California.

As Mejia states in his brief, "[T]he claims in the case all relate to Del Amo's failure to disclose to Mejia . . . the costs associated with the financing of the motorcycle in a single document, as required by the Rees-Levering Act." In other words, the complaint only seeks to evaluate, penalize, and correct Del Amo's alleged illegal practices; WebBank's practices are simply not in issue in the case. It follows that the complaint does not implicate Utah's interest in "regulating banks chartered within its borders."

We conclude Mejia also carried his burden of showing California has a materially greater interest than Utah in the determination of the "particular issue" involved: the enforceability of an arbitration provision which bars Mejia from seeking in any forum public injunctive relief against Del Amo. Accordingly, the trial court properly applied the California Supreme Court's decision in *McGill*, *supra*, 2 Cal.5th 945 in denying the petition to compel arbitration.

B. *The Arbitration Provision is Unenforceable under McGill*

Del Amo asserts several arguments for finding *McGill* does not invalidate the arbitration clause in this case. None has merit.

1. Mejia Seeks a Public Injunction under *McGill*

Del Amo argues the arbitration clause is not unenforceable under *McGill* because Mejia "did not seek a public injunction." Del Amo asserts that "[al]though Mejia labeled his action as one for a 'public' injunction, the injunctive relief he sought was actually private. *McGill* therefore does not apply." Del Amo asserts, "Mejia does not seek to prevent future harm to the general public," but rather seeks an injunction to benefit only a "narrow group of Del Amo customers"—the class of similarly situated individuals who, like Mejia, would buy a motorcycle from Del Amo with a conditional

13

sale contract.  The general public, Del Amo argues, would not benefit from such a "private" injunction.[1]  The argument makes little sense.

Mejia's brief demonstrates the illogic of Del Amo's argument.  Mejia points out his prayer seeks an injunction forcing Del Amo to cease "selling motor vehicles in the state of California without first providing the consumer with all disclosures mandated by Civil Code [section] 2982 in a single document."  Mejia asserts, "[T]he prayer is plainly one for a public injunction given that Mejia 'seeks to enjoin future violations of California's consumer protection statutes, relief oriented to and for the benefit of the general public.'  (*Blair* [*v. Rent-A-Center, Inc.* (9th Cir. 2019) 928 F.3d [819,] 831.) [¶] . . . Mejia's prayer does not limit itself to relief only for class members or some other small group of individuals; it encompasses 'consumers' generally.  (See *Cruz v. PacifiCare Health Sys., Inc.* (2003) 30 Cal.4th 303, 315 [(*Cruz*)] ['the request for injunctive relief is clearly for the benefit of health care *consumers* and the general public by seeking to enjoin PacifiCare's alleged deceptive advertising practices' (emphasis added)].)"

---

[1]  Del Amo argues the facts of this case are analogous to those in *Clifford v. Quest Software* (2019) 38 Cal.App.5th 745 (*Clifford*), where we held the plaintiff in that case could not avoid arbitration of a UCL claim under "the *Broughton/Cruz* rule" because he sought *private* injunctive relief for the benefit of only himself and a group of similarly situated persons.  Del Amo contends Mejia, like the plaintiff in *Clifford*, seeks only a private injunction.

*Clifford* is not analogous.  As Mejia points out, *Clifford* "was a wage and hour case that did not involve either the Rees-Levering Act or the CLRA.  Moreover, the private nature of the UCL claim that was alleged was 'immediately evident' from the face of the complaint given that the complaint 'repeatedly refers to wage and hour violations directed at *Clifford only*.'  (38 Cal.App.4th at 753.)  The prayer was similarly limited, with '[t]he only express beneficiary of Clifford's requested injunctive relief . . . [being] Clifford;' 'the only potential beneficiaries are Quest's current employees.'"

Unlike the patently "private" injunctive relief the plaintiff sought in *Clifford*, we explain here the injunctive relief Mejia seeks is clearly for the benefit of the general public.

14

The Supreme Court in *McGill* distinguished private and public injunctions. The opinion defined "private injunctive relief" as "relief that primarily 'resolve[s] a private dispute' between the parties [citation] and 'rectif[ies] individual wrongs' [citation], and that benefits the public, if at all, only incidentally[.]" (*McGill*, *supra*, 2 Cal.5th at p. 955.) The opinion defined "public injunctive relief" as "relief that 'by and large' benefits the general public [citation] and that benefits the plaintiff, 'if at all,' only 'incidental[ly]' and/or as 'a member of the general public' [citation]." (*Ibid.*) The high court cited as an example of a public injunction "an injunction under the CLRA against a defendant's deceptive methods, acts, and practices [which] 'generally benefit[s]' the public 'directly by the elimination of deceptive practices' and 'will . . . not benefit' the plaintiff 'directly,' because the plaintiff has 'already been injured, allegedly, by such practices and [is] aware of them.' [Citation.] '[E]ven if a CLRA plaintiff stands to benefit from an injunction against a deceptive business practice, it appears likely that the benefit would be incidental to the general public benefit of enjoining such a practice.' [Citation.]" (*Ibid.*)

We conclude the injunctive relief Mejia prays for in the complaint fits the Supreme Court's definition of "public injunctive relief" in *McGill*: "injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." (*McGill*, *supra*, 2 Cal.5th at p. 951.) Consequently, there is no merit to Del Amo's argument *McGill* is inapplicable because Mejia does not seek public injunctive relief.

2.      The Arbitration Provision Bars a Public Injunction in Every Forum

Del Amo similarly fails to persuade us *McGill* is inapplicable because the arbitration clause, "properly interpreted," does not preclude a public injunction "in every forum." Del Amo's argument depends on a strained, unreasonable interpretation of the arbitration clause. We concur with the trial court's interpretation of the arbitration clause

15

as barring Mejia from seeking public injunctive relief "in *any* forum," thereby rendering the arbitration clause unenforceable under *McGill*.

The trial court's reasoning in the minute order can be summarized as follows: The arbitration provision "prevents [Mejia] from seeking and obtaining a public injunction in arbitration."[2] Del Amo's election to compel arbitration made arbitration "the *only* forum available to [Mejia]."[3] Given that, under *McGill*, the statutory right to seek a public injunction is unwaivable and an arbitration agreement which purports to waive that statutory right is unenforceable (*McGill*, *supra*, 2 Cal.5th at p. 961), the court might have "saved" the arbitration clause by "sever[ing] the prohibition on public injunctive relief from the Arbitration Provision." The court could not save the arbitration clause, however, because of the "poison pill" contained in the clause "restrict[ing] the right of the Court to sever." That restriction is in section 36, subpart (h), which provides that "[i]f an arbitration is brought on a class, representative, or collective basis, and the limitations on such proceedings in section (f) are finally adjudicated pursuant to the last sentence of section (f) to be unenforceable, then no arbitration shall be had." Having concluded the arbitration provision's "limitation on public injunctive relief is unenforceable" under *McGill*, the court further concluded "'then no arbitration shall be had.'"

Del Amo explicitly attacks as "erroneous" the first two premises of the trial court's reasoning. Del Amo argues "settled principles of contract interpretation" support a different construction of the arbitration clause.

---

[2] Section 36, subpart (f) barred arbitration on "a class, representative, or collective basis (including as private attorney general on behalf of others)" and also explicitly barred the arbitrator from determining "the rights, obligations, or interests of anyone other than a named party" or from "mak[ing] an award for the benefit of . . . anyone other than a named party."

[3] Section 36, subpart (a) gave Del Amo as a Yamaha "dealer" the right to elect arbitration as "the sole and exclusive forum and remedy for resolution of a Claim . . . ."

16

In a nutshell, Del Amo contends the arbitration provision requiring arbitration (upon Del Amo's election to arbitrate) of any "Claim" has an *implied* exception for a claim for a public injunction; the arbitration provision allows Mejia to pursue his claim for public injunction in court *after arbitration of all arbitrable claims*. Consequently, the arbitration provision does *not* purport to waive the right to seek a public injunction in every forum and is, therefore, not unenforceable under *McGill*. Close inspection of Del Amo's argument reveals its errors.

There is no merit to Del Amo's contention the arbitration provision has an "implied exception" for seeking a public injunction. An implied exception must be consistent with the intent of the parties as expressed in the contract, and must be reasonable in light of the whole contract. "A contract must receive such an interpretation as will make it lawful . . . and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643.) "We do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there." (*Vons Companies, Inc. v. United States Fire Ins. Co.* (2000) 78 Cal.App.4th 52, 59.) Here, the purported implied exception for a public injunction directly conflicts with the plain text of the arbitration provision and the clear intent expressed in that text.

As the trial court specifically noted, the "poison pill" provision in subpart (h) expressly states that if a court finds "unenforceable" the "limitations" in subpart (f) on the arbitration of "class, representative, or collective" actions and on "class, representative, or collective" *relief* (such as a public injunction), "then no arbitration shall be had." In other words, the arbitration provision makes clear the parties do not intend to arbitrate "other claims" if the "limitations" on the arbitration of "class, representative [and] collective" claims are unenforceable. The clear import of the poison pill, then, is the parties intend to forfeit arbitration entirely if class, representative, or collective claims

17

(and relief) are exempted from the reach of the arbitration provision and allowed to be tried in court.

Given the text and intent of the poison pill in subpart (h), Del Amo's argument for an implied exception for public injunctive relief makes no sense. Notwithstanding Del Amo's invocation of general rules of construction favoring construing "arbitration provisions to support their enforceability[] (*Pearson Dental [Supplies, Inc. v. Superior Court* (2010)] 48 Cal.4th [665,] 681-682)," we reject the unreasonable interpretation of the arbitration provision Del Amo urges here.

Del Amo's final argument is the FAA preempts *McGill.* We need not discuss this contention, however, because Del Amo itself concedes the argument has no chance of success. Del Amo states in a footnote to its opening brief: "The California Supreme Court and the Ninth Circuit have held that the FAA does *not* preempt the *McGill* rule. (*McGill, supra*, 2 Cal.5th at p. 952; *Blair v. Rent-A-Center, Inc., supra,* 928 F.3d at p. 824.) Del Amo acknowledges that this Court is bound by McGill, but raises the preemption point to preserve it for appellate review by the California or United States Supreme Courts.")

In conclusion, the trial court properly found the arbitration provision unenforceable under *McGill*, *supra*, 2 Cal.5th at p. 961, and on that basis properly denied Del Amo's petition to compel arbitration.[4]

---

[4]    In light of this conclusion, we need not address Mejia's two arguments, rejected by the trial court, that Del Amo as a nonsignatory to the credit card agreement lacks standing to enforce that agreement's arbitration clause, and that the claims in his complaint are outside the scope of the agreement to arbitrate.

## III

### DISPOSITION

The order denying the petition to compel arbitration is affirmed. Mejia is entitled to his costs on appeal.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


IKOLA, J.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOSEPH MEJIA,<br><br>    Plaintiff and Respondent,<br><br>       v.<br><br>DACM INC.,<br><br>    Defendant and Appellant. | G058112<br><br>(Super. Ct. No. 30-2018-01023401)<br><br>O R D E R |

Respondent, Joseph Mejia, and nonparties Center for Consumer Law and Economic Justice, National Consumer Law Center, Consumers for Auto Reliability and Safety, Housing and Economic Rights Advocates, and UC Consumer Law Clinic have requested that our opinion filed on August 24, 2020, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED. The opinion is ordered published in the Official Reports.

ARONSON, J.

WE CONCUR:

MOORE, ACTING P. J.

IKOLA, J.